UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Boyd Allen Washington, | ) | Civil Action No. 5:17-cv-1677-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Nancy A. Berryhill, Acting | ) | ORDER |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court reverses and remands the Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

A.      Procedural History

On March 31, 2014, Plaintiff protectively filed for DIB under Title II of the Act, alleging he became disabled on March 7, 2014. Tr. 197-200. After being denied initially, Tr. 93, and upon reconsideration, Tr. 107, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 124-25. The ALJ conducted a hearing on June 17, 2016, taking testimony from Plaintiff and Vocational Expert ("VE") Arthur Schmitt. Tr. 32-56. Representing Plaintiff at that hearing was his attorney, Christi McDaniel. Tr. 32. The ALJ denied Plaintiff's claim in a decision dated September 14, 2016. Tr. 17-26. Plaintiff requested review of this decision from the Appeals Council, Tr. 193-95, which denied his request on June 8, 2017, Tr. 1-5, making the ALJ's September 2016 decision

the Commissioner's final decision for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed June 26, 2017. ECF No. 1.

B.      Plaintiff's Background

Plaintiff was born in November 1957 and was 56 years old as of his alleged onset date of March 7, 2014. Tr. 251. In his form Disability Report-Adult dated March 31, 2014, Plaintiff indicated he completed two years of college and completed welding training in 2010. Tr. 242. His past relevant work ("PRW") included machine operator for a hosiery manufacturing company (1995-2001), machine operator for a fiber manufacturing company (2001-2008), manufacturing material handler (2010-03/2011), auto manufacturing set-up operator (03/2011-09/2011), and food tech for a food manufacturing company (09/2011-03/2014). *Id.* Plaintiff indicated he stopped working on March 7, 2014 because of left shoulder pain. Tr. 241. In a Disability Report-Appeal dated October 15, 2014, Plaintiff indicated a new physical impairment that began in August 2014 of "bilateral thigh pain and fatigue which ended up being a Vitamin D deficiency." Tr. 301. Plaintiff indicated no changes in his ability to care for his own needs and no changes in his daily activities. Tr. 304.

C.      Administrative Proceedings

On June 17, 2016, Plaintiff appeared with counsel at an administrative hearing and testified regarding his application for DIB. Tr. 32. VE Arthur Schmitt also appeared and testified at the hearing. *Id.* The hearing was conducted via video conferencing with Plaintiff and his attorney appearing in Florence, South Carolina and the ALJ and VE appearing in Charleston, South Carolina. Tr. 34.

### 1. Plaintiff's Testimony

In response to questions from the ALJ Plaintiff testified that he lived alone, was born in November 1957, and in 2010 obtained an Associate's Degree in General Technology. Tr. 38. Plaintiff indicated that he was not currently working and had not worked since March 2014. *Id.* Plaintiff testified that he stopped working because of the Heinz plant closure and although he was offered a chance to work in Ohio, he testified that he was not offered the same job and was told he would make less money. Tr. 39. Plaintiff testified that he did not look for other work while he was collecting unemployment benefits because he did not feel he was able to perform any jobs. Tr. 40. Plaintiff testified that he was having problems performing his job before the plant closed and stated that he "had to have other individuals to do the lifting part of [his] responsibilities." *Id.* Plaintiff confirmed that his job included "assembly machinery and . . . loading food product into the machine[.]" *Id.* Plaintiff stated that at the time of the plant closure he was not able to carry bags that weighed as much as 50 pounds; he also testified that he was not able to carry those bags when he started working there. Tr. 40-41.

In response to questions from his counsel Plaintiff stated that when Heinz hired him they did not know he was unable to do the lifting. Tr. 41. Plaintiff testified that during his first year or two he was not trying to do the lifting because he had other people helping him. *Id.* Upon further questioning from counsel Plaintiff indicated that because he did not know anyone when he first started working he had to do some of the lifting in his first year. *Id.* Plaintiff testified that within six months he knew other employees well enough so that they would help him. *Id.* Plaintiff testified that although he was not lifting 50 pounds he was doing as much as his body allowed him to do. Tr. 42. Plaintiff stated that he had shoulder and back issues that prevented him from lifting. *Id.* Plaintiff

testified that for "a couple of years" before he stopped working he was seeing his family doctor, Dr. Pavlov, for those issues. *Id.*

Plaintiff testified that before working at Heinz he worked at ANA Bearing for six months as a machine operator. *Id.* Plaintiff confirmed that in that job he stood and walked a good portion of the day. Tr. 42-43. Plaintiff stated the heaviest weight he lifted at ANA Bearing was at "least 40 pounds." Tr. 43. Plaintiff stated that the job at Heinz also required that he stand and walk in order to run the machinery. *Id.* Plaintiff testified that he also worked at Honda for eight or nine months on the assembly line and in that job lifted at least 40 pounds. *Id.* Plaintiff stated that he worked as a machine operator at Wellman for eight years and that job required standing and walking. *Id.* He stated the job at Wellman, where he was a draw frame operator, required lifting at least 50 pounds. Tr. 44. Prior to that Plaintiff was employed for 15 years with Sara Lee Hosiery as a knitting machine fixer. *Id.* Plaintiff confirmed that job required standing and walking and lifting up to 40 pounds. *Id.*

Plaintiff testified that he had a driver's license and did "some" driving. Tr. 44. Plaintiff testified that if he drove over an hour he would have to stop and stretch his lower left back. Tr. 44-45. Plaintiff stated that in addition to his back and shoulders he also had pain in both thighs. Tr. 45. Plaintiff testified that he had pain in both shoulders but the left shoulder was worse (he confirmed he was right-handed) and he had daily, constant pain that varied in severity. Plaintiff stated on a scale of one-to-ten his shoulder pain was a five all the time. *Id.* Plaintiff stated his lower back pain was constant and daily and he rated it a five on the pain scale. Tr. 46. Plaintiff testified that his thigh pain was different from his back pain and varied from two-to-four times per week. Plaintiff stated that the pain level was "about a six when it's there." *Id.* Plaintiff testified that his lower back pain is worse if he sits or stands for a long time. He stated that it hurts when he wakes up in the morning,

varies in severity, but hurts all the time. Tr. 46-47. Plaintiff confirmed that, like when driving, the longest he could sit in a chair is about one hour. Tr. 47. Plaintiff stated that he could stand without leaning on something for 25 minutes before needing to sit down and he could walk for 15 minutes before needing to sit. *Id.* Plaintiff testified that he had problems with lifting and carrying but could lift groceries weighing 10 pounds out of his car and into the house. *Id.* Plaintiff testified that he could stoop but not bend. Tr. 47-48. Plaintiff stated that his shoulders hurt worse from overuse or from extending them. Plaintiff stated he is unable to lift his arms over his head or extend them in front of him. Tr. 48. Plaintiff stated that he had some trouble using his hands and noticed that he dropped small items like coins. *Id.* Plaintiff stated that to alleviate his pain he took medication, used pillows and towels for comfort, and changed positions. Tr. 48-49. Plaintiff stated that he takes 800 milligrams of Ibuprofen three times a day, and he takes Naproxen three-to-four times a week. Tr. 49. Plaintiff indicated that he was also taking the over-the-counter medication Aleve and he was still taking Tizanidine twice a day for muscle spasms. Tr. 50. Plaintiff testified that he had to discontinue use of cyclobenzaprine because of the side effects of nausea and mood swings. *Id.* Plaintiff testified that another health problem was that the middle finger on his right hand "locks up in place" and he has to "physically unlock it a lot." Tr. 50-51.

Plaintiff testified that he could dress and bathe himself, he could "do a very little bit of cooking," and he had someone to help him with housework. Tr. 51. Plaintiff stated he is unable to mop floors or hang out clothes, but he is able to wash dishes. *Id.* Plaintiff stated that he does not do a lot of physical activity during the day; he just sits and watches TV or is on the computer for an hour at a time because he has problems with concentration. Tr. 52-53.

2.      VE's Testimony

The VE identified Plaintiff's PRW as follows: food technician, Dictionary of Occupational Titles ("DOT" or "DICOT") 311.374-010, SVP 5 skilled, medium; machine operator, DOT 619.685-062, SVP 3 semiskilled, medium; and material handler, DOT 929.687-030, SVP 3 semiskilled, heavy. Tr. 53-54. The ALJ asked the VE to assume someone of the same age, education, and work background as Plaintiff who is "limited to medium work as defined in the regulations; is limited to only frequent pushing with the left upper extremity, pushing and pulling; only occasional overhead reaching with the left upper extremity; [and] no more than occasional exposure to extremes in temperature[.]" Tr. 54. The ALJ asked if that person would be able perform Plaintiff's past work and the VE testified that "he could do the food tech and the machine operator, but could not do material handler." *Id.* The VE stated that the individual could do the jobs both as generally performed and as actually performed. *Id.* The ALJ asked if the individual were limited to light work as defined in the regulations with the same restrictions as in the first hypothetical would the past work be feasible. The VE testified that would eliminate all PRW and there would be no transferable skills to any lower exertional level. Tr. 54-55. The VE indicated his testimony was consistent with the DOT. Tr. 55. Plaintiff's counsel had no questions for the VE but noted that if Plaintiff got to the sedentary level the GRIDS would apply. *Id.*

II.      Discussion

A.      The ALJ's Findings

In his September 14, 2016 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.      The claimant meets the insured status requirements of the Social Security Act through March 31, 2017.

2. The claimant has not engaged in substantial gainful activity since March 7, 2014, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, hypertension, and degenerative joint disease of the left shoulder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). Specifically, the claimant is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day except that the claimant can frequently push/pull with his left upper extremity and can have no more than occasional exposure to temperature extremes.

6. The claimant is capable of performing past relevant work as a food technician and machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 7, 2014, through the date of this decision (20 CFR. 404.1520(f)).

Tr. 22-26.

B. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling

C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d

at Step 3).

846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.      Analysis

Plaintiff alleges that the ALJ erred in his residual functional capacity ("RFC") assessment, failed to properly weigh the opinion of a treating physician, and the ALJ improperly determined Plaintiff could perform his PRW and instead should have applied the Medical-Vocational Guidelines ("Grids") in a Step Five analysis. Pl.'s Br. 9-16, ECF No. 15. The Commissioner submits that substantial evidence supports the ALJ's decision that Plaintiff was capable of medium exertion work, the ALJ properly evaluated the physician's opinion, and the Grids do not apply. Def.'s Br. 9-16, ECF No. 17.

1.      ALJ's RFC Assessment

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level the ALJ is responsible for assessing a

claimant's RFC. 20 C.F.R. § 404.1546(c). An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(3) and (4).

Here, the ALJ made the following RFC assessment regarding Plaintiff:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). Specifically, the claimant is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day except that the claimant can frequently push/pull with his left upper extremity and can have no more than occasional exposure to temperature extremes.

Tr. 23. The ALJ stated that in making this finding he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p." *Id.* The ALJ stated that he also "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." *Id.*

### a.     Medium Level Work

Plaintiff asserts that because of chronic pain in his neck and left upper extremity he "is unable to perform the lifting and carrying requirements of medium work." Pl.'s Br. 10. In support of this assertion Plaintiff cites to his hearing testimony and various medical records including those of Drs. Hassler, Mancuso, Denton, Powell, and Patel. *Id.* Plaintiff argues that the "Commissioner ignored all of this evidence of record by finding that the Plaintiff could perform the lifting requirements of medium work." *Id.* at 11. Plaintiff further argues that the "only evidence on which the Commissioner is able to rely to support her finding of a residual functional capacity for medium work is the opinion of non-examining state agency medical consultants, who did not have the benefit of either examining the Plaintiff and also did not have the benefit of reviewing all of the Plaintiff's medical records." *Id.* Plaintiff also contends that his "need to frequently change positions

and the inability to stand and walk for up to six hours daily is not consistent with the requirements of medium work." *Id.* at 12.

The Commissioner contends that the "ALJ properly concluded that, despite his left arm overhead reaching restriction, Plaintiff could perform the same work he did prior to his plant closing." Def.'s Br. 10. The Commissioner notes that records cited by Plaintiff either pre-date by more than one year his alleged onset date or are records that the ALJ specifically considered in making his RFC determination. *Id.* As noted by the Commissioner, the ALJ referred to Plaintiff's April 2014 function report wherein he stated that he lifted up to 50 pounds although he denied this at the hearing. *Id.* (citing Tr. 24).

The regulations define medium work as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). As noted above, an ALJ's RFC assessment should be based on all relevant evidence and consideration of a claimant's abilities. In making his RFC determination the ALJ cited to Dr. Powell's treatment notes from 2014 and 2016; images of Plaintiff's shoulder from 2014 and of his lumbar spine in 2016; and the medical opinions of treating physicians, evaluating physicians, and state agency medical consultants—including Plaintiff's reported ADLs. Tr. 24-25. Regarding Dr. Patel's 2014 examination, the ALJ considered his note that Plaintiff "would have some trouble reaching overhead due to shoulder pain" and the ALJ included this limitation in the RFC assessment. Tr. 25. With respect to standing/walking limitations the ALJ also considered Dr. Patel's report that Plaintiff was able to change positions without difficulty; had normal gait; was able to tandem walk, squat, and walk on his heels and toes; had bilateral lower extremity strength of 5/5; and had no visible muscle atrophy. *Id.* The ALJ noted that "[o]ther than the reaching limitation, no other work-related functional limitations were indicated." *Id.* After his discussion of the medical

evidence and opinions the ALJ concluded:

> In sum, in light of the claimant's back and shoulder pain, the undersigned has limited the claimant to medium work with limitations on reaching. Additionally, the claimant can have no more than occasional exposure to temperature extremes. However, due to the aforementioned inconsistencies, particularly the relatively benign physical examinations and the extent of the claimant's daily activities, the undersigned cannot find that the claimant's allegations that he is incapable of all work activity to be consistent with the remaining medical evidence of record.

Tr. 26.

### b.    Regular and Continuing Basis

SSR 96-8p provides:

> Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*.

SSR 96-8p, 1996 WL 374184, at *2 (footnotes omitted, emphasis in original). "Thus, the RFC is, by definition, an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Beckham v. Colvin*, No. CIV.A. 8:13-2774-BHH, 2015 WL 733785, at *11 (D.S.C. Feb. 20, 2015). "The Fourth Circuit Court of Appeals has explained that RFC determinations may contain implicit findings, including a finding of the ability to work on a regular and continuing basis." *Id.* (citing *Hines v. Barnhart,* 453 F.3d 559, 563 (4th Cir. 2006) ("In light of SSR 96–8p, [the ALJ's] conclusion [that plaintiff could perform a range of sedentary work] implicitly contained a finding that [plaintiff] physically is able to work an eight hour day.")). It is a claimant's burden to present evidence of disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a)(generally setting forth a claimant's burden to produce evidence of a

disabling impairment and the Agency's right to deny a claim for lack of evidence); *Blalock v. Richardson,* 483 F.2d at 774.

Citing to his testimony "that he is capable of performing small household chores, but he needs help doing heavy chores such as mopping or carrying a clothes basket" and that he "also has difficulty concentrating on a computer or a television show for more than one hour" Plaintiff argues an inability to perform sustained work activities. Pl.'s Br. 14. Plaintiff asserts that "[t]his inability to concentrate would limit his ability to persist in a work setting, and his inability to persist at basic household chores due to his medically determinable impairments would add up to an individual who would need more breaks than is allowable in full-time work." *Id.*

In his decision the ALJ noted Plaintiff's testimony regarding his ADLs, but also noted inconsistencies such as Plaintiff's receipt of unemployment benefits which required Plaintiff's certification that he was "able to work, is available for full-time work, is willing to accept suitable work if offered, and is actively seeking full-time work each week." Tr. 24. The ALJ also referenced a July 2014 office note of Dr. Powell that reflected Plaintiff was "going back to school to take additional classes, indicating that he is capable of more activity than stated." *Id.* The ALJ found that these references in the record indicated Plaintiff was capable of sustaining full-time work. Tr. 26.

The undersigned notes that the ALJ's RFC assessment explicitly accounts for medium work performed in an eight-hour day which comports with the language in SSR 96-8p as a "regular and continuing basis." The ALJ determined that based on the record Plaintiff was capable of performing medium-level work. Accordingly, the undersigned finds no error in the ALJ's RFC assessment.

### 2. Opinion of Treating Physician

Plaintiff contends the ALJ erred in giving little weight to the opinion of Dr. J. William Powell. Pl.'s Br. 12. Defendant argues that substantial evidence supports the ALJ's analysis of Dr. Powell's opinion. Def.'s Br. 15.

If a treating source's medical opinion is "well-supported and 'not inconsistent' with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. § 404.1527(c)(2)(providing treating source's opinion will be given controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The Commissioner typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005); 20 C.F.R. § 404.1527(c). The rationale for the general rule affording opinions of treating physicians greater weight is "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson*, 434 F.3d at 654 (quoting *Mastro v. Apfel*, 270 F.3d 171,

178 (4th Cir. 2001)). The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro*, 270 F.3d at 176. SSR 96-2p requires that an unfavorable decision contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence.

On January 19, 2015, Plaintiff's treating physician, Dr. Powell, completed a Physical Capacities Evaluation and a Clinical Assessment of Pain. Tr. 458-59. According to Plaintiff, prior to Dr. Powell's January 2015 assessment he was last seen by Dr. Powell in July and August of 2014. Pl.'s Br. 7 (citing Tr. 452-57). After that Plaintiff no longer had insurance and began treating with the Free Medical Clinic of Darlington County. *Id.* Plaintiff returned to Dr. Powell in April and May of 2016. *Id.* at 8. The ALJ considered these treatment records in discussing his RFC assessment. Tr. 24.

In his Physical Capacities Evaluation, Dr. Powell limited Plaintiff to lifting and/or carrying 10 pounds occasionally and 5 pounds frequently. Tr. 458. He noted Plaintiff could sit for 8 hours in an 8-hour workday and stand or walk for four-to-five hours. He indicated that Plaintiff did not need an assistive device and had no environmental limitations. *Id.* Dr. Powell indicated that Plaintiff could rarely perform pushing and pulling, gross manipulation (grasping, twisting, and handling), fine manipulation (finger dexterity), bending and/or stooping movements, or work with or around hazardous machinery. *Id.* He indicated Plaintiff could occasionally climb stairs or ladders and balance or operate motor vehicles, and Plaintiff could never perform reaching (including overhead).

*Id.* Dr. Powell did not respond to the question asking how many days per month Plaintiff would likely be absent from work due to his impairments or treatment. As the medical basis for his restrictions Dr. Powell wrote: "[Patient] has severe shoulder pain & seen by several specialists." *Id.*

In a Clinical Assessment of Pain completed the same day Dr. Powell circled responses to three questions. Each question offered four possible response choices labeled A, B, C, and D. Tr. 459. The first question asked: "To what extent is pain of significance in the treatment of this patient?" Dr. Powell circled response "C" which indicated: "Pain is present to such an extent as to be distracting to adequate performance of daily activities or work." *Id.* The second question asked: "To what extent will physical activity, such as walking, standing, sitting, bending, stooping, moving of extremities, etc., increase the degree of pain experienced by this patient?" Dr. Powell again circled response "C" which stated: "Greatly increased pain and to such a degree as to cause distraction from tasks or total abandonment of task." The third question asked the doctor to indicate, in his best judgment, "to what extent will the side effects of prescribed medication impact upon this patient's ability to perform his/her work?" Dr. Powell circled response "B" which indicated: "Some limitations may be present but not to such a degree as to create serious problems in most instances." *Id.*

The ALJ considered the January 19, 2015[2] opinion of Dr. Powell contained in responses to the two questionnaires. Tr. 25 (citing exhibit 13F). The ALJ noted that "[g]iven Dr. Powell's conservative treatment of the claimant and minimal clinical findings, and the claimant's activities of daily living, this opinion is unsupported and is given little weight." *Id.* Plaintiff argues that Dr. Powell's opinion was supported by diagnostic findings (x-rays) and he has been treated by other

_____

[2] In his decision the ALJ indicated the evaluation was completed in April 2016. The handwritten date is somewhat illegible; however, both the Index of record exhibits and Plaintiff indicate the date as January 19, 2015.

specialists for shoulder pain. Pl.'s Br. 13. Plaintiff also cites to the diagnoses of consultative examiner Dr. Pravin Patel. *Id.* Plaintiff concludes that because "[t]here is no other evidence which contradicts Dr. Powell's opinion, and since it is supported by acceptable objective testing, Dr. Powell's opinion as the Plaintiff's treating physician should have been entitled to controlling weight." *Id.* Citing to 20 C.F.R. § 404.1512(e) Plaintiff contends that if the ALJ needed clarification on Dr. Powell's opinion he was "legally bound" to re-contact him to seek additional evidence or clarification. Pl.'s Br. 13-14.

As noted by the Commissioner, the ALJ duly considered both of the x-rays Plaintiff cited in support of Dr. Powell's opinion in conjunction with Dr. Powell's treatment notes. Def.'s Br. 12. The ALJ noted that the June 2014 x-ray of Plaintiff's left shoulder "revealed that the claimant has bulky AC joint arthropathy with undersurface spurring with no fracture, subluxation or bony lesions. (Exhibit 10F)." Tr. 24. The ALJ next noted that at Plaintiff's June 2014 visit to Dr. Powell he indicated he was "going back to school to take additional classes, indicating that he is capable of more activity than stated. (Exhibit 12F)." *Id.* The ALJ noted that Plaintiff "had a grossly normal exam at that time." *Id.* That ALJ continued discussing Dr. Powell's August 2014 treatment note in which Plaintiff "complained of shoulder pain and was prescribed Mobic, which he stated he has tolerated well in the past. The claimant was not found to need narcotic pain medication, physical therapy, or interventional treatment." *Id.* The ALJ also considered the May 2015 images made of Plaintiff's lumbar spine that "revealed only mild lower lumbar facet disease with no instability on flexion/extension and left lower pole density. (Exhibit 15F)." *Id.* Citing to Dr. Powell's April 2016 exam the ALJ indicated that despite Plaintiff's complaints of back and shoulder pain the "exam revealed normal motor strength and tone despite tenderness of the left paraspinal area." *Id.*

The responsibility for weighing evidence falls on the Commissioner, not the reviewing court. *See Craig v. Chater*, 76 F.3d at 589. The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d at 176. "When, as here, an ALJ denies a claimant's application, the ALJ must state 'specific reasons for the weight given to the treating source's medical opinion,' to enable reviewing bodies to identify clearly the reasons for the ALJ's decision." *Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016). In *Sharp*, the Fourth Circuit determined that the "ALJ did not summarily conclude that [the doctor's] opinion merited little weight" because the ALJ explained why he discredited the opinion, remarking that the claimant's limitations were not supported by the doctor's office notes. *Id.* Here, as required by SSR 96-2p, the ALJ's decision contained specific reasons for the weight given to Dr. Powell's opinion—it was not supported by his conservative treatment records, his minimal clinical findings, and Plaintiff's ADLs. The court is not to weigh evidence or substitute its judgment for that of the Commissioner, but is to determine whether the ALJ's weighing of the evidence is supported by substantial evidence in the record. *See generally Hays v. Sullivan*, 907 F.2d at 1456 (noting judicial review limited to determining whether findings supported by substantial evidence and whether correct law was applied). An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(c). Dr. Powell's opinion consisted of check-marked or circled responses in a questionnaire. Tr. 458-59. *Bishop v. Astrue*, No. CA 1:10-2714-TMC, 2012 WL 951775, at *3 n.5 (D.S.C. Mar. 20, 2012) (noting that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *See, e.g., Mason v. Shalala,* 994 F.2d

1058, 1065 (3d Cir. 1993). *See also O'Leary v. Schweker,* 710 F.2d 1334, 1341 (8th Cir. 1993) (observing that checklist forms are entitled to little weight due to lack of explanation)). The regulations provide that "[t]he better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). Here, the only explanation Dr. Powell provided for his opinions was that Plaintiff had severe shoulder pain and had been seen by several specialists. Tr. 458. Plaintiff cites Dr. Patel's opinion as evidence to "confirm[] that the Plaintiff had reduced range of motion in his shoulders and difficulty lifting overhead." Pl.'s Br. 13. However, unlike Dr. Powell's wide-ranging limitations, the only limitation found by Dr. Patel was that Plaintiff "would have some trouble reaching overhead due to his shoulder pain." Tr. 401. The ALJ's reasons for discounting Dr. Powell's opinion are supported by substantial evidence.

There was no reason for the ALJ to re-contact Dr. Powell. At the time Plaintiff filed his claim this version of the regulation—placing an affirmative duty on the ALJ to re-contact a treating physician—was no longer in effect.[3] The relevant regulation is 20 C.F.R. § 404.1520b, effective March 26, 2012 to March 26, 2017. That regulation provides:

> If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (c)(1) through (c)(4) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.

---

[3] This version of the regulations ceased to be effective in March 2012. It required an ALJ to re-contact a claimant's treating physician when the evidence from that medical source was inadequate to determine whether the claimant was disabled. 20 C.F.R. §§ 404.1512(e) and 416.912(e), effective June 13, 2011 to March 25, 2012.

20 C.F.R. § 404.1520b(c). Section (c)(1) provides that an ALJ "*may* recontact [a claimant's] treating physician, psychologist, or other medical source." *Id.* (emphasis added).

Here, the ALJ did not find the evidence from Dr. Powell to be consistent or insufficient to determine whether Plaintiff was disabled. The ALJ gave Dr. Powell's opinion little weight because he found it to be unsupported by the record. Accordingly, he was under no duty to re-contact him.

### 3. Plaintiff's Ability to Perform PRW

Plaintiff argues that the ALJ's hypothetical to the VE was incomplete because all of Plaintiff's impairments were not included in the RFC. Pl.'s Br. 14. Plaintiff concludes that the VE's opinion that Plaintiff could return to his PRW as a food technician and machine operator is unreliable and, therefore, because he cannot do his PRW "the Commissioner failed to satisfy her burden of proof at Step V of the Sequential Evaluation Process since she failed to provide evidence of other jobs that the Plaintiff could perform in the national economy." *Id.* at 15. Plaintiff argues that because he could not perform his PRW and based on the opinion of Dr. Powell, he should be limited to sedentary work which would require application of the Grids—resulting in a finding of disability. *Id.* at 15-16. The Commissioner contends that because the ALJ determined Plaintiff's RFC exceeds sedentary work the Grids do not apply and the ALJ properly relied on VE testimony to determine Plaintiff could perform his PRW. Def.'s Br. 15-16.

SSR 82–62 sets out the procedures the SSA uses at step four of the sequential evaluation process when determining whether the claimant's RFC permits the return to PRW. The ALJ must consider whether a claimant has the RFC to "meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy)," and, if the claimant can return to

PRW, he may be found to be not disabled. SSR 82–62, 1982 WL 31386, at *3. The ruling further provides:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

*Id.* SSR 82-62 further requires the following when the decision-maker determines that a claimant can meet the physical and mental demands of PRW:

> The rationale for a disability decision must be written so that a clear picture of the case can be obtained. The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion.
>
>            * * *
>
> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

*Id.* at *3–4.

At the administrative hearing Plaintiff testified regarding his duties in his prior work. Tr. 40-44. The VE classified Plaintiff's PRW and in response to a hypothetical from the ALJ opined that an individual limited to medium work, limited to only frequent pushing/pulling and only occasional overhead reaching with the left upper extremity could perform Plaintiff's PRW of food technician and machine operator both as generally and actually performed, but could not perform the work of

material handler. Tr. 53-54. Included in the discussion of Plaintiff's RFC in his decision the ALJ noted Plaintiff's testimony regarding his work as a food technician and as a machine operator. Tr. 23. At Step Four of his decision, the ALJ made the following finding regarding Plaintiff's ability to return to PRW:

> The claimant is capable of performing past relevant work as a food technician and machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

> The undersigned finds that the claimant performed this work within 15 years prior to the time of adjudication of the claim, performed such work at substantial gainful activity levels, and performed such work for a time period sufficient to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation. See also Social Security Ruling 82-62.

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

Tr. 26.

The ALJ considered Plaintiff's impairments, his testimony, and his ADLs, evaluated the objective and opinion medical evidence, and determined Plaintiff retained an RFC for "medium work as defined in 20 CFR 404.1567(c)" with an exception that Plaintiff could only frequently push/pull with his left upper extremity and could have no more than occasional exposure to temperature extremes. Tr. 23. The ALJ complied with SSR 82-62 because he made a finding of fact as to Plaintiff's RFC, determined through Plaintiff's testimony and work history report the demands associated with Plaintiff's PRW, and with the help of the VE determined that Plaintiff's RFC would permit his return to PRW. However, in its review of the VE's testimony and the ALJ's decision, the court has considered the two jobs identified as capable of being performed by Plaintiff and is unable to determine that the ALJ's decision is based on substantial evidence. "Adequate documentation of past work includes factual information about those work demands which have a bearing on the

medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate." SSR 82-62, 1982 WL 31386, at *3.

The VE testified that the job of food technician is listed in the DOT under 311.374-010. Tr. 53. The DOT does not contain a job with that particular number. Jobs identified as starting with "3" are service occupations and jobs listed under "311" include food and beverage preparation and service occupations such as counter supervisor, DICOT 311.137-010, 1991 WL 672678; car hop, DICOT 311.477-010, 1991 WL 672683; canteen operator, DICOT 311.674-010, 1991 WL 672691; and cafeteria attendant, DICOT 311.677-010, 1991 WL 672694. Based on Plaintiff's description of his job as a food tech in his work history report, Tr. 267-68, the court has identified the job of food processing production helper, DOT 529.686-070 as a possible and more accurate job category. The DOT description of this job is as follows:

> Feeds machine hoppers with ingredients, transports and packs finished products, and performs any combination of following tasks in food processing and packaging establishment: Dumps prepared ingredients into hoppers of grinding and mixing machines. Transfers finished products and raw materials about plant and warehouse, using handtruck. Stacks processed food in warehouse and coolers. Packs food products in paper bags and boxes. Loads packaging machines with bags, cans, and jars. Verifies weights of filled containers emerging from packaging machines. Removes foreign material from food on conveyor belts. Sprinkles grated cheese and other flavoring on foods.

DICOT 529.686-070, 1991 WL 674732. This job is listed as medium strength and requires frequent reaching. *Id.* While food processing production helper would fit the criteria for the ALJ's decision regarding Plaintiff's ability to perform PRW, because this particular industry category was not specifically considered and identified by the VE, and because the category identified by the VE does not exist, the undersigned is unable to state definitively that substantial evidence supports the ALJ's Step Four determination.

Additionally, the VE opined that an individual with Plaintiff's RFC could perform the job of machine operator, DOT 619.685-062, both as generally and actually performed. However, the description of this job indicates that it involves constant reaching and the ALJ has limited Plaintiff to only frequent reaching. *See* DICOT 619.685-062, 1991 WL 685217. Accordingly, the undersigned finds that Plaintiff would be incapable of performing this job as generally and actually performed. Unfortunately for this analysis, the ALJ did not ask (nor was he required to ask[4]) and the VE did not identify any other jobs available in the national economy that Plaintiff could perform. Because the undersigned cannot make a determination regarding the ALJ's Step Four conclusion the court is constrained to remand this matter for further consideration.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds remand is warranted based on the ALJ's Step Four analysis. The decision of the Commissioner is reversed pursuant to 42 U.S.C. § 405(g) and remanded to the agency for further action consistent with this order.

IT IS SO ORDERED.


August 9, 2018                                    Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge

---

[4] Because the ALJ found Plaintiff capable of performing his PRW at Step Four, that ends the sequential evaluation process and precludes the requirement of Step Five analysis. 20 C.F.R. § 404.1520(a). Consequently, the disability determination ended and the ALJ was not required to proceed to Step Five and seek information from a VE regarding other available work in the national economy.